COMMONWEALTH OF KENTUCKY
GREENUP CIRCUIT COURT
Civil Action No.: 08-CI-538



CAROLYN EVANS, Individually and as Personal
Representative of the Estate of
CATHERINE RIGSBY

PLAINTIFF,

v.

**WURTLAND HEALTH CARE CENTER, INC. d/b/a
WURTLAND NURSING & REHABILITATION CENTER;**          DEFENDANTS
     **Serve, via Certified Mail:**
     Kenneth Williams, Jr.
     1505 Carter Avenue Ste. 202
     PO Box 2116
     Ashland, KY 41105
     Registered Agent

**DIVERSICARE, INC.;**
     **Serve, via Certified Mail:**
     James T. Wilson
     600 Clifty Street
     Somerset, KY 42503
     Registered Agent

**DIVERSICARE LEASING CORP.;**
     **Serve, via Certified Mail:**
     National Registered Agents. Inc.
     400 West Market Street
     Ste. 1800
     Louisville, KY 40202
     Registered Agent

**DIVERSICARE MANAGEMENT SERVICES, CO.;**
     **Serve, via Certified Mail:**
     National Registered Agents. Inc.
     400 West Market Street
     Ste. 1800
     Louisville, KY 40202
     Registered Agent

**ADVOCATE HEALTH, LLC;**
    **Serve, via Certified Mail:**
     National Registered Agents, Inc.
    400 West Market Street
    Ste. 1800
    Louisville, KY 40202
    Registered Agent

**ADVOCATE, INC.; and**
    **Serve, via Certified Mail:**
    National Registered Agents, Inc.
    400 West Market Street
    Ste. 1800
    Louisville, KY 40202
    Registered Agent

**ADVOCAT ANCILLARY SERVICES, INC.**
    **Serve, via Certified Mail:**
    National Registered Agents, Inc.
    400 West Market Street
    Ste. 1800
    Louisville, KY 40202
    Registered Agent

<u>COMPLAINT</u>

Plaintiff, Carolyn Evans, individually and as the Personal Representative of the Estate of Catherine Rigsby, deceased, for her Complaint against the Defendants Wurtland Health Care Center, Inc. d/b/a Wurtland Nursing & Rehabilitation Center, Diversicare, Inc., Diversicare Leasing Corp., Diversicare Management Service, Co., Advocate Health, LLC, Advocate, Inc., and Advocat Ancillary Services Inc. states as follows.

2

## GENERAL ALLEGATIONS

1.    Carolyn Evans ("Plaintiff") is a resident of Charleston County, South Carolina, is *sui juris*, and is the daughter of the decedent, Catherine Rigsby.

2.    On November 29, 2007, the Greenup District Court entered an Order appointing Plaintiff as the Administratrix of the Estate of the Estate of Catherine Rigsby, deceased, in Greenup County, Kentucky.

3.    Venue is proper in this Court because the tortuous actions of the Defendants, as asserted herein, occurred in Greenup County, Kentucky. This Court has subject matter Jurisdiction over the claims asserted herein because the amount in controversy exceeds the jurisdictional limits of this Court.

4.    At all times material hereto, Wurtland Healthcare d/b/a Wurtland Nursing and Rehabilitation Center ("Wurtland") was a wholly owned subsidiary of Defendant Diversicare, Inc., and was controlled by Defendant Diversicare, Inc. Based upon its actual ownership, operation, management and control of the skilled nursing facility, Diversicare, Inc., was an owner and a de facto "licensee" of the nursing home.

5.    At all times material hereto, Defendant Diversicare, Inc., exercised extensive authority over Wurtland, including, but not limited to, control of marketing, human resources, management, training, staffing, policy and procedure creation and implementation, federal and state Medicare and Medicaid reimbursement, quality care assessments and compliance, licensure and certification procedures, legal services, financial, tax, and accounting control.

6.    At all times material to this action, Defendant Diversicare, Inc. exercised control of Wurtland, including creation and maintenance of overlapping, interlocking corporate officers and boards of directors, transfer and utilization of employees

3

between subsidiary and parent corporations without regard to corporate form, and combined accounting processes and bookkeeping procedures including intra-corporate transfers of assets and liabilities.

7.     At all times material to this action, Defendant Diversicare, Inc. was the alter ego of Defendant Wurtland and Defendant Diversicare, Inc. exercised such control of the operational and management functions of Wurtland and the facility that these entities served as mere conduits through which Defendant Diversicare, Inc. conducted its business.

8.     Moreover, at all times material to this action, Defendant Diversicare, Inc. represented to the public, including Catherine Rigsby and her family, that it and its subsidiaries, including Wurtland Nursing & Rehabilitation Center and the nursing home, were part of one single economic enterprise known as "Wurtland".

9.     In the alternative, Plaintiff alleges that, at all times material to this action, Wurtland acted as the agent of Defendant Diversicare, Inc. in that Defendant Diversicare, Inc. ratified or authorized the acts and/or omissions of Wurtland and the staff of the facility.

10.     In the alternative, Plaintiff alleges that, to the extent Defendant Diversicare, Inc. and Wurtland are found to be separate corporate entities, each Defendant remains liable for the acts of the others, as the Defendants operated the facility as a joint enterprise and/or joint venture. Defendants entered into an express or implied agreement to operate this nursing home and other Kentucky nursing homes. Defendants shared a common interest and purpose in the operation of these facilities. Defendant Diversicare, Inc. shared authority over the operation of this nursing home and other nursing homes set up in a similar fashion.

4

11.    In the alternative, Plaintiff alleges that at all times material to this action, Defendant Diversicare, Inc. established and operated Wurtland for an improper purpose; i.e., that Diversicare, Inc. knowingly operated facilities, including this facility, in the state of Kentucky in a manner that includes, but is not limited to, operating the Kentucky facilities with insufficient staff and insufficient supplies to meet the residents' needs.

12.    At all times material hereto, Wurtland was a wholly owned subsidiary of Defendant Diversicare Leasing Corp., and was controlled by Defendant Diversicare Leasing Corp. Based upon its actual ownership, operation, management and control of the skilled nursing facility, Diversicare Leasing Corp., was an owner and a de facto "licensee" of the nursing home.

13.    At all times material hereto, Defendant Diversicare Leasing Corp., exercised extensive authority over Wurtland, including but not limited to, control of marketing, human resources, management, training, staffing, policy and procedure creation and implementation, federal and state Medicare and Medicaid reimbursement, quality care assessments and compliance, licensure and certification procedures, legal services, financial, tax, and accounting control.

14.    At all times material to this action, Defendant Diversicare Leasing Corp. exercised control of Wurtland, including creation and maintenance of overlapping, interlocking corporate officers and boards of directors, transfer and utilization of employees between subsidiary and parent corporations without regard to corporate form, and combined accounting processes and bookkeeping procedures including intra-corporate transfers of assets and liabilities.

5

15.    At all times material to this action, Defendant Diversicare Leasing Corp. was the alter ego of Defendant Wurtland and Defendant Diversicare Leasing Corp. exercised such control of the operational and management functions of Wurtland and the facility that these entities served as mere conduits through which Defendant Diversicare Leasing Corp. conducted its business.

16.    Moreover, at all times material to this action, Defendant Diversicare Leasing Corp. represented to the public, including Catherine Rigsby and her family, that it and its subsidiaries, including Diversicare Leasing Corp. and the nursing home, were part of one single economic enterprise known as "Wurtland".

17.    In the alternative, Plaintiff alleges that at all times material to this action, Wurtland acted as the agent of Defendant Diversicare Leasing Corp. in that Defendant Diversicare Leasing Corp. ratified or authorized the acts and/or omissions of Wurtland and the staff of the facility.

18.    In the alternative, Plaintiff alleges that to the extent Defendant Diversicare Leasing Corp. and Wurtland are found to be separate corporate entities, each Defendant remains liable for the acts of the others, as the Defendants operated the facility as a joint enterprise and/or joint venture. Defendants entered into an express or implied agreement to operate this nursing home and other Kentucky nursing homes. Defendants shared a common interest and purpose in the operation of these facilities. Defendant Diversicare Leasing Corp. shared authority over the operation of this nursing home and other nursing homes set up in a similar fashion.

19.    In the alternative, Plaintiff alleges that at all times material to this action, Defendant Diversicare Leasing Corp. established and operated Wurtland for an improper purpose; i.e. that Diversicare Leasing Corp. knowingly operating facilities,

6

including this facility, in the state of Kentucky in a manner that includes, but is not limited to, operating the Kentucky facilities with insufficient staff and insufficient supplies to meet the residents' needs.

20.     At all times material hereto, Wurtland was a wholly owned subsidiary of Defendant Diversicare Management Service, Co., and was controlled by Defendant Diversicare Management Service, Co. Based upon its actual ownership, operation, management and control of the skilled nursing facility, Diversicare Management Service, Co., was an owner and a de facto "licensee" of the nursing home.

21.     At all times material hereto, Defendant Diversicare Management Service, Co., exercised extensive authority over Wurtland, including but not limited to, control of marketing, human resources, management, training, staffing, policy and procedure creation and implementation, federal and state Medicare and Medicaid reimbursement, quality care assessments and compliance, licensure and certification procedures, legal services, financial, tax, and accounting control.

22.     At all times material to this action, Defendant Diversicare Management Service, Co. exercised control of Wurtland, including creation and maintenance of overlapping, interlocking corporate officers and boards of directors, transfer and utilization of employees between subsidiary and parent corporations without regard to corporate form, and combined accounting processes and bookkeeping procedures including intra-corporate transfers of assets and liabilities.

23.     At all times material to this action, Defendant Diversicare Management Service, Co. was the alter ego of Wurtland and Defendant Diversicare Management Service, Co. exercised such control of the operational and management functions of

7

Wurtland and the facility that these entities served as mere conduits through which Defendant Diversicare Management Service, Co. conducted its business.

24.     Moreover, at all times material to this action, Defendant Diversicare Management Service, Co. represented to the public, including Catherine Rigsby and her family, that it and its subsidiaries, including Diversicare Management Service, Co. and the nursing home were part of one single economic enterprise known as "Wurtland".

25.     In the alternative, Plaintiff alleges that at all times material to this action, Wurtland acted as the agent of Defendant Diversicare Management Service, Co. in that Defendant Diversicare Management Service, Co. ratified or authorized the acts and/or omissions of Wurtland and the staff of the facility.

26.     In the alternative, Plaintiff alleges that to the extent Defendant Diversicare Management Service, Co. and Wurtland are found to be separate corporate entities, each Defendant remains liable for the acts of the others, as the Defendants operated the facility as a joint enterprise and/or joint venture. Defendants entered into an express or implied agreement to operate this nursing home and other Kentucky nursing homes. Defendants shared a common interest and purpose in the operation of these facilities. Defendant Diversicare Management Service, Co. shared authority over the operation of this nursing home and other nursing homes set up in a similar fashion.

27.     In the alternative, Plaintiff alleges that at all times material to this action, Defendant Diversicare Management Service, Co. established and operated Wurtland for an improper purpose; i.e., that Diversicare Management Services, Co. Inc. knowingly operating facilities, including this facility, in the state of Kentucky in a manner that includes, but is not limited to, operating the Kentucky facilities with insufficient staff and insufficient supplies to meet the residents' needs.

8

28.     At all times material hereto. Defendant Wurtland Nursing & Rehabilitation Center (hereinafter also referred to as "Wurtland") was a wholly owned subsidiary of Defendant Advocate Health, LLC, and was controlled by Defendant Advocate Health, LLC. Based upon its actual ownership, operation, management and control of the skilled nursing facility, Advocate Health, LLC, was an owner and a de facto "licensee" of the nursing home.

29.     At all times material hereto. Defendant Advocate Health, LLC, exercised extensive authority over the nursing home, including, but not limited to, control of marketing, human resources, management, training, staffing, policy and procedure creation and implementation, federal and state Medicare and Medicaid reimbursement, quality care assessments and compliance, licensure and certification procedures, legal services, financial, tax, and accounting control.

30.     At all times material to this action, Defendant Advocate Health, LLC exercised control of Wurtland including creation and maintenance of overlapping, interlocking corporate officers and boards of directors, transfer and utilization of employees between subsidiary and parent corporations without regard to corporate form, and combined accounting processes and bookkeeping procedures including intra-corporate transfers of assets and liabilities.

31.     At all times material to this action. Defendant Advocate Health, LLC was the alter ego of Defendant Wurtland and Defendant Advocate Health, LLC exercised such control of the operational and management functions of Wurtland and the facility that these entities served as mere conduits through which Defendant Advocate Health, LLC conducted its business.

9

32. Moreover, at all times material to this action, Defendant Advocate Health, LLC represented to the public, including Catherine Rigsby and her family, that it and its subsidiaries, including Advocate Health, LLC and the nursing home were part of one single economic enterprise known as "Wurtland".

33. In the alternative, Plaintiff alleges that at all times material to this action, Wurtland acted as the agent of Defendant Advocate Health, LLC in that Defendant Advocate Health, LLC ratified or authorized the acts and/or omissions of Wurtland and the staff of the facility.

34. In the alternative, Plaintiff alleges that to the extent Defendant Advocate Health, LLC and Wurtland are found to be separate corporate entities, each Defendant remains liable for the acts of the others, as the Defendants operated the facility as a joint enterprise and/or joint venture. Defendants entered into an express or implied agreement to operate this nursing home and other Kentucky nursing homes. Defendants shared a common interest and purpose in the operation of these facilities. Defendant Advocate Health, LLC shared authority over the operation of this nursing home and other nursing homes set up in a similar fashion.

35. In the alternative, Plaintiff alleges that at all times material to this action, Defendant Advocate Health, LLC established and operated Wurtland for an improper purpose; i.e., that Defendant Advocate Health, LLC knowingly operating facilities, including this facility, in the state of Kentucky in a manner that includes, but is not limited to, operating the Kentucky facilities with insufficient staff and insufficient supplies to meet the residents' needs.

36. At all times material hereto, Defendant Wurtland Nursing & Rehabilitation Center (hereinafter also referred to as "Wurtland") was a wholly owned

10

subsidiary of Defendant Advocate, Inc., and was controlled by Defendant Advocate. Inc.. Based upon its actual ownership, operation, management and control of the skilled nursing facility, Advocate, Inc., was an owner and a de facto "licensee" of the nursing home.

37.   At all times material hereto, Defendant Advocate, Inc., exercised extensive authority over the nursing home, which included, but was not limited to, control of marketing, human resources, management, training, staffing, policy and procedure creation and implementation, federal and state Medicare and Medicaid reimbursement, quality care assessments and compliance, licensure and certification procedures, legal services, financial, tax, and accounting control.

38.   At all times material to this action, Defendant Advocate, Inc. exercised control of Wurtland including creation and maintenance of overlapping, interlocking corporate officers and boards of directors, transfer and utilization of employees between subsidiary and parent corporations without regard to corporate form, and combined accounting processes and bookkeeping procedures including intra-corporate transfers of assets and liabilities.

39.   At all times material to this action, Defendant Advocate, Inc. was the alter ego of Defendant Wurtland and Defendant Advocate, Inc. exercised such control of the operational and management functions of Wurtland and the facility that these entities served as mere conduits through which Defendant Advocate, Inc. conducted its business.

40.   Moreover, at all times material to this action, Defendant Advocate, Inc. represented to the public, including Catherine Rigsby and her family, that it and its

subsidiaries, including Advocate, Inc. and the nursing home were part of one single economic enterprise known as "Wurtland".

41.    In the alternative, Plaintiff alleges that at all times material to this action, Wurtland acted as the agent of Defendant Advocate. Inc. in that Defendant Advocate, Inc. ratified or authorized the acts and/or omissions of Wurtland and the staff of the facility.

42.    In the alternative, Plaintiff alleges that to the extent Defendant Advocate. Inc. and Wurtland are found to be separate corporate entities, each Defendant remains liable for the acts of the others, as the Defendants operated the facility as a joint enterprise and/or joint venture. Defendants entered into an express or implied agreement to operate this nursing home and other Kentucky nursing homes. Defendants shared a common interest and purpose in the operation of these facilities. Defendant Advocate, Inc. shared authority over the operation of this nursing home and other nursing homes set up in a similar fashion.

43.    In the alternative, Plaintiff alleges that at all times material to this action, Defendant Advocate, Inc. established and operated Wurtland for an improper purpose: i.e., that Diversicare, Inc. knowingly operating facilities, including this facility, in the state of Kentucky in a manner that includes, but is not limited to, operating the Kentucky facilities with insufficient staff and insufficient supplies to meet the residents' needs.

44.    At all times material hereto, Defendant Wurtland Nursing & Rehabilitation Center (hereinafter also referred to as "Wurtland") was a wholly owned subsidiary of Defendant Advocat Ancillary Services, Inc., and was controlled by Defendant Advocat Ancillary Services, Inc. Based upon its actual ownership, operation,

12

management and control of the skilled nursing facility, Advocat Ancillary Services. Inc., was an owner and a de facto "licensee" of the nursing home.

45.     At all times material hereto, Defendant Advocat Ancillary Services, Inc., exercised extensive authority over the nursing home. which included, but was not limited to, control of marketing, human resources, management. training, staffing. policy and procedure creation and implementation, federal and state Medicare and Medicaid reimbursement, quality care assessments and compliance, licensure and certification procedures, legal services, financial, tax, and accounting control.

46.     At all times material to this action, Defendant Advocat Ancillary Services, Inc. exercised control of Wurtland including creation and maintenance of overlapping, interlocking corporate officers and boards of directors. transfer and utilization of employees between subsidiary and parent corporations without regard to corporate form, and combined accounting processes and bookkeeping procedures including intra-corporate transfers of assets and liabilities.

47.     At all times material to this action, Defendant Advocat Ancillary Services, Inc. was the alter ego of Defendant Wurtland and Defendant Advocat Ancillary Services, Inc. exercised such control of the operational and management functions of Wurtland and the facility that these entities served as mere conduits through which Defendant Advocat Ancillary Services, Inc. conducted its business.

48.     Moreover, at all times material to this action, Defendant Advocat Ancillary Services, Inc. represented to the public, including Catherine Rigsby and her family, that it and its subsidiaries, including Advocat Ancillary Services, Inc. and the nursing home were part of one single economic enterprise known as "Wurtland".

49.     In the alternative, Plaintiff alleges that at all times material to this action, Wurtland acted as the agent of Defendant Advocat Ancillary Services, Inc. in that Defendant Advocat Ancillary Services, Inc. ratified or authorized the acts and/or omissions of Wurtland and the staff of the facility.

50.     In the alternative, Plaintiff alleges that to the extent Defendant Advocat Ancillary Services, Inc. and Wurtland are found to be separate corporate entities, each Defendant remains liable for the acts of the others, as the Defendants operated the facility as a joint enterprise and/or joint venture. Defendants entered into an express or implied agreement to operate this nursing home and other Kentucky nursing homes. Defendants shared a common interest and purpose in the operation of these facilities. Defendant Advocat Ancillary Services, Inc. shared authority over the operation of this nursing home and other nursing homes set up in a similar fashion.

51.     In the alternative, Plaintiff alleges that at all times material to this action, Defendant Advocat Ancillary Services, Inc. established and operated Wurtland for an improper purpose; i.e., that Advocat Ancillary Services, Inc. knowingly operating facilities, including this facility, in the state of Kentucky in a manner that includes, but is not limited to, operating the Kentucky facilities with insufficient staff and insufficient supplies to meet the residents' needs.

52.     At all times material hereto, Wurtland was and is authorized and licensed to operate a nursing home facility in Greenup County, Kentucky known as Wurtland Nursing & Rehabilitation Center.

53.     Catherine Rigsby was a nursing home resident of Defendants' nursing facility, Wurtland Nursing & Rehabilitation Center, from August 5, 2005 until August 3, 2007.

54.     During the period of time Mrs. Rigsby was under the care of Wurtland Nursing & Rehabilitation Center, Defendant had a statutorily mandated duty to provide Mrs. Rigsby with her nursing home resident's rights as set forth in KSR 216.515 and 902 KAR 20:026 and 902 KAR 20:048, included, but were not limited to, the following:

        (a)     the right to be adequately informed of her medical condition and proposed treatment;

        (b)     the right to participate in the planning of all medical treatment;

        (c)     the right to be treated courteously, fairly, and with the fullest measure of dignity;

        (d)     the right to be free from mental and physical abuse; and

        (e)     the right to retain and use personal possessions.

55.     Defendants' duties outlined in the above-referenced rules and regulations were non-delegable duties such that Defendants had and have direct liability for violations, deprivations, and infringements of Mrs. Rigsby's nursing home resident's rights caused by any officers, managing agents, servants, employees, or outside caregivers acting in furtherance of any of the Defendants' operations.

56.     Defendants were and are vicariously liable for the negligence of Defendants' officers, managing agents, servants, and employees acting within the course and scope of their employment by Defendants, which occurred during Mrs. Rigsby's residency at Wurtland Nursing & Rehabilitation Center.

57.     At all times material hereto, Wurtland Nursing & Rehabilitation Center was a licensed professional nursing home and had a duty to provide care and services to Mrs. Rigsby in accordance with regulations promulgated in the Kentucky

Code of State Rules and the Code of Federal Regulations, and in a reasonably prudent and careful manner under common law, consistent with accepted practice standards in the area.

58.     Defendants further had a duty to properly train, supervise, hire, retain and dismiss any servants, employees and agents, or outside caregivers or contractors for services utilized by Defendants in furtherance of the operation of Wurtland as a nursing home facility, which occurred during Mrs. Rigsby's residency.

59.     On August 5, 2005, Mrs. Rigsby was admitted to Wurtland for the purposes of receiving quality care and treatment and assistance in her activities of daily living. Catherine Rigsby and her family expected Wurtland to provide her with quality care as required by law.

60.     Mrs. Rigsby suffered from several falls during her admission to Wurtland. Defendants failed to appropriately assess Mrs. Rigsby for her risk of falling and, further, failed to provide sufficient staff to monitor Mrs. Rigsby, failed to develop and implement an adequate plan of care for her falls or potential falls and failed provide appropriate fall prevention measures and/or devices.

61.     Furthermore, Mrs. Rigsby suffered from abuse from another resident while at Wurtland. Defendants negligently failed to provide Mrs. Rigsby with a safe environment free from abuse and failed to take appropriate measures to prevent abuse of her by other residents.

62.     Also, Defendants failed to provide sufficient staff to adequately monitor Mrs. Rigsby and other residents at Wurtland. As a result, Mrs. Rigsby's hand was crushed in a door by a resident of Wurtland on July 28, 2007.

63. The negligence and carelessness of the professionals and non-professionals at Wurtland contributed substantially in causing serious injuries to Mrs. Rigsby resulting in pain, suffering and ultimately her death.

64. As set forth herein, at all relevant times, the Defendants acted, individually and collectively, directly or through their agents, servants, or employees and the acts of these agents, servants, or employees were authorized, or ratified by the Defendants or the actions or omissions of the servants, agents, or employees should have been anticipated by the Defendants.

65. In addition, the actions of the Defendants, whether directly or through their agents, servants, or employees, were oppressive, fraudulent, or malicious, thus entitling the Plaintiff to punitive damages under KRS 413.184 and KRS 411.186

## COUNT I
## STATUTORY VIOLATIONS

65. Plaintiff realleges and incorporates herein by reference Paragraphs 1 through 64 of this Complaint as set forth in full herein.

66. This action is brought, in part, pursuant to KRS 216.515.

67. Notwithstanding the duties of Defendants to provide Mrs. Rigsby with her nursing home residents' rights mandated by statute during the relevant time period, Mrs. Rigsby was deprived of her right to receive adequate and appropriate health care and protective and support services consistent with her care plan, with recognized practice standards and with rules as adopted by the Kentucky Cabinet of Health. The acts and omissions of Defendants, their agents, servants, employees, or outside caregivers, included but were not limited to, the following:

17

(a)    Failing to keep Mrs. Rigsby and her family members fully informed of her total health status and of her medical condition during her residency at Defendants' facility;

(b)    Failing to provide a sufficient number of staff to provide adequate and appropriate nursing care to all its residents, including Mrs. Rigsby, and in accordance with their resident care plans;

(c)    Failing to provide health care services in compliance with state law and applicable Federal and State Rules and Regulations and with acceptable professional standards and principles applicable to the personnel providing those services at the nursing home facility; and

(d)    Failing to care for Mrs. Rigsby in a manner and in such an environment so as prevent falls and abuse, in order to promote the maintenance or enhancement of her quality of life;

68.    Defendants' acts and omissions during the relevant time period also violated Mrs. Rigsby's right to be treated courteously, fairly and with the fullest measure of dignity.

69.    As a direct and proximate result of Defendant's acts and omissions during her residency at Wurtland Nursing & Rehabilitation Center, Mrs. Rigsby suffered from abuse and falls and other problems at the nursing home facilities resulting in physical injuries, mental anguish, physical pain and suffering and incurred medical treatment and expenses for such treatment and was deprived of

adequate and appropriate treatment and healthcare or had such treatment and healthcare delayed and was denied her rights as a nursing home resident. Therefore, Mrs. Rigsby sustained lethal and non-lethal infringements of her rights as a nursing home resident at the Defendants' nursing home facility. As set forth herein, the actions and omissions of the Defendants and their servants, agents and employees, were authorized or ratified by the Defendants or should have been anticipated by the Defendants and, in addition, were oppressive, fraudulent, and malicious and therefore punitive damages are justified.

## COUNT II
### NEGLIGENCE

69.     Plaintiff realleges and incorporates by reference paragraphs 1 through 68 above and further states as follows:

70.     Defendants had duty to act with reasonable care in the provision of services to Mrs. Rigsby during the course of her residency at Wurtland.

71.     Defendants breached their duty to Mrs. Rigsby, as set forth herein.

72.     As a direct and proximate result of the negligence of the Defendants employees, agents, and servants, committed during her residency and in the course and scope of their agency and employment, Mrs. Rigsby sustained injuries due to abuse and falls.

73.     As a direct and proximate result of the negligence of said employees and agents committed during the relevant time period in the course and scope of their agency and employment, Mrs. Rigsby sustained bodily injuries resulting in pain and suffering, mental anguish, inconvenience, physical impairment, loss of capacity

for the enjoyment of life, aggravation of existing diseases and physical defects, and ultimately death and incurred medical expenses. As set forth herein, the actions and omissions of the Defendants and their servants, agents and employees, were authorized or ratified by the Defendants or should have been anticipated by the Defendants and, in addition, were oppressive, fraudulent, and malicious and therefore punitive damages are justified.

COUNT III
<u>WRONGFUL DEATH CLAIM</u>

74.    Plaintiff realleges and incorporates by reference paragraphs 1 through 73 above and further states as follows:

75.    This action is brought, in part, for wrongful death pursuant to KRS 411.130.

76.    Plaintiff Catherine Rigsby, individually, was and is a surviving daughter of Catherine Rigsby, deceased.

77.    Defendants and their employees had a duty to act with reasonable care in the provision of care and services to Mrs. Rigsby during the course of their nursing home operations.

78.    Defendants breached their duties to the decedent, Mrs. Rigsby, by and through the acts and omissions of its agents, servants, and employees, both managerial and non-managerial, while acting in the course and scope of their employment, and/or while acting in the scope of their agency relationship, in one or more of the ways described hereinabove.

79.    As a direct and proximate result of the negligence of Defendant's employees, servants and agents, committed in the course and scope of their agency

20

and employment, the decedent, Mrs. Rigsby, suffered from systemic abuse and neglect causing significant injuries, and ultimately led or contributed to her death on or about August 3, 2007.

80.     As a direct and proximate result of the negligence of Defendant's employees, servants and agents, committed in the course and scope of their agency and employment, Catherine Rigsby died and Carolyn Evans, individually and as a representative of the Estate of Catherine Rigsby, has sustained mental pain and suffering and loss of companionship and guidance of her mother as a result of her death.

81.     As a direct and proximate result of the negligence of Defendant and its employees, Plaintiff's survivor and/or Estate have incurred medical expenses for the care and treatment of the conditions that led to her death and, additionally, the Estate has incurred funeral expenses. As set forth herein, the actions and omissions of the Defendants and their servants, agents and employees, were authorized or ratified by the Defendants or should have been anticipated by the Defendants and, in addition, were oppressive, fraudulent, and malicious and therefore punitive damages are justified.

## COUNT IV
## BREACH OF CONTRACT

Plaintiff realleges and incorporates by reference paragraphs 1 through 81 above and further states as follows:

82.     On or about August 5, 2005, Ms. Rigsby entered into an agreement with Wurtland, whereby Wurtland, in exchange for valuable consideration, agreed to provide Ms. Rigsby with certain benefits including, but not limited to. adequate living assistance, skilled nursing care, and skilled supervision.

83.     The Defendants breached this agreement with Catherine Rigsby by failing to provide her with adequate living assistance, skilled nursing care. and skilled supervision.

84.     As a legal and proximate result, the breach of contract by the Defendant herein, Catherine Rigsby suffered injuries to her person. including but not limited to, personal injuries, abuse, falls and injuries inflicted upon her by other residents of Wurtland.

85.     The Plaintiff is thus entitled to recover from Defendants for all. remedies available to her for breach of contract these damages exceed the statutory limits necessary to evoke the Jurisdiction of this Court.

WHEREFORE, Plaintiff, Carolyn Evans, Individually and as Personal Representative of the Estate of Catherine Rigsby, respectfully demands the following:

1.     A trial by jury on all issues so triable;

2.     Plaintiff, on behalf of the Estate of Catherine Rigsby, recover compensatory and/or statutory damages from the Defendant, including but not limited to pain and suffering, medical, funeral, administration and burial expenses, in such amount as the trier of the fact shall deem just and reasonable;

3.     Plaintiff recover punitive damages from the Defendant in an amount or amounts determined by the trier of fact;

4.     Plaintiff be awarded all appropriate costs, attorneys' fees, and interest authorized by law on the judgment which maybe entered on Plaintiff's behalf;

5.     That the Court enters other such relief as is deemed just and proper.

Dated this _____day of July, 2008.

Respectfully Submitted,

Andrew L. Paternostro, Sr.
Erin L. Winter
Bell & Bands, PLLC
P.O. Box 1723
Charleston, WV 25326-1723
(606) 325-0431

Gregory C. Shields
Shields Law Offices
P.O. Box 361
Catlettsburg Ky., 41129
(606) 739-0350

Attorney for Plaintiff

23

| | | |
|---|---|---|
| AOC-S-105   Sum Code: CI<br>Rev. 7-99<br><br>Commonwealth of Kentucky<br>Court of Justice<br>CR 4.02; Cr Official Form 1 | <br>**Civil Summons** | Case Number **08-CI-00538**<br>Court   CI<br>County   GREENUP |

*Plantiff,* CAROLYN EVANS, INDIV. AND PERS.REP.OF EST, CATHERINE RIGSBY, *Defendant*

    WURTLAND HEALTH CARE CENTER, KENNETH WILSON
    1505 CARTER AVENUE, STE. 202
    P.O.BOX 2116
    ASHLAND                    KY      41105

**The Commonwealth of Kentucky to the above-named Defendant(s):**

You are hereby notified that a legal action has been filed against you in this court demanding relief as shown on the document delivered to you with summons.  Unless a written defense is made by you or by an attorney on your behalf  within twenty (20) days following the day this paper is delivered to you, judgement by default may be taken against you for the relief demanded in the attached complaint.

The name(s) and address(es) of the party or parties demanding such relief against you or his/her (their) attorney(s) are shown on the document delivered to you with this summons.

Circuit/District Clerk, ALLEN KENT REED

By _Carrie A Reed_ , DC

Date: 07/25/2008

COPY

---

**Proof of Service**

[ ] This Summons was served by delivering a true copy and the Complaint (or other initiating document)
        To:

[ ] Not Served because:

Date: _____ 2___

                                                  Served by _____

---

CI   08-CI-00538

CAROLYN EVANS, INDIV. AND PERS.REP.OF EST, CATHERINE RIGSBY





| AOC-S-105 Sum Code: CI Rev. 7-99 | Case Number **08-CI-00538** |
|---|---|
| | Court CI |
| Commonwealth of Kentucky Court of Justice CR 4.02; Cr Official Form 1 | County GREENUP |

**Civil Summons**

*Plantiff,* CAROLYN EVANS, INDIV. AND PERS.REP.OF EST, CATHERINE RIGSBY, *Defendant*

DIVERSICARE, INC,
SERVE: JAMES T. WILSON
600 CLIFTY STREET
SOMERSET                    KY      42503

The Commonwealth of Kentucky to the above-named Defendant(s):

You are hereby notified that a legal action has been filed against you in this court demanding relief as shown on the document delivered to you with summons. Unless a written defense is made by you or by an attorney on your behalf within twenty (20) days following the day this paper is delivered to you, judgement by default may be taken against you for the relief demanded in the attached complaint.

The name(s) and address(es) of the party or parties demanding such relief against you or his/her (their) attorney(s) are shown on the document delivered to you with this summons.

Circuit/District Clerk, ALLEN KENT REED

By _Carrieck Brul_ , DC

Date: 07/25/2008                        copy

| Proof of Service | |
|---|---|
| [ ] This Summons was served by delivering a true copy and the Complaint (or other initiating document) To: | |
| [ ] Not Served because: | |
| Date: _____, 2____ | Served by _____ |

CI    08-CI-00538
CAROLYN EVANS, INDIV. AND PERS.REP.OF EST, CATHERINE RIGSBY



AOC-S-105   Sum Code: CI
Rev. 7-99

Commonwealth of Kentucky
Court of Justice
CR 4.02; Cr Official Form 1



**Civil Summons**

Case Number 08-CI-00538
Court  CI
County  GREENUP

*Plantiff,* CAROLYN EVANS, INDIV. AND PERS.REP.OF EST, CATHERINE RIGSBY, *Defendant*

> DIVERSICARE LEASING CORP.,
> SERVE: NATIONAL REGISTERED AGENTS, INC
> 400 WEST MARKET STREET, STE. 1800
> LOUISVILLE          KY     40202

The Commonwealth of Kentucky to the above-named Defendant(s):

You are hereby notified that a legal action has been filed against you in this court demanding relief as shown on the document delivered to you with summons. Unless a written defense is made by you or by an attorney on your behalf within twenty (20) days following the day this paper is delivered to you, judgement by default may be taken against you for the relief demanded in the attached complaint.

The name(s) and address(es) of the party or parties demanding such relief against you or his/her (their) attorney(s) are shown on the document delivered to you with this summons.

Circuit/District Clerk, ALLEN KENT REED

By _____, DC

Date: 07/25/2008                    COPY

| Proof of Service |
|---|
| [  ] This Summons was served by delivering a true copy and the Complaint (or other initiating document) |
| To: |
| [  ] Not Served because: |
| Date: |
| Served by |

C1     08-CI-00538
CAROLYN EVANS, INDIV. AND PERS.REP.OF EST, CATHERINE RIGSBY

||||||||| |||| ||||| |||||| |||| ||||| ||||| ||| |||| |||| |||| ||| |||| ||

| AOC-S-105  Sum Code: CI | | Case Number 08-CI-00538 |
| Rev. 7-99 | | Court CI |
| | | County GREENUP |
| Commonwealth of Kentucky | |
| Court of Justice |  |
| CR 4.02; Cr Official Form 1 | Civil Summons |

*Plantiff,* CAROLYN EVANS, INDIV. AND PERS.REP.OF EST, CATHERINE RIGSBY, *Defendant*

> DIVERSICARE MANAGEMENT SERVICES, CO,
> SERVE: NATIONAL REGISTERED AGENTS, INC
> 400 WEST MARKET STREET, STE. 1800
> LOUISVILLE        KY      40202

The Commonwealth of Kentucky to the above-named Defendant(s):

You are hereby notified that a legal action has been filed against you in this court demanding relief as shown on the document delivered to you with summons. Unless a written defense is made by you or by an attorney on your behalf within twenty (20) days following the day this paper is delivered to you, judgement by default may be taken against you for the relief demanded in the attached complaint.

The name(s) and address(es) of the party or parties demanding such relief against you or his/her (their) attorney(s) are shown on the document delivered to you with this summons.

Circuit/District Clerk, ALLEN KENT REED

By _____ , DC

Date: 07/25/2008                    *copy*

---

**Proof of Service**

[ ] This Summons was served by delivering a true copy and the Complaint (or other initiating document)
    To:

[ ] Not Served because:

Date: _____, 2____

Served by: _____

---

CI    08-CI-00538
CAROLYN EVANS, INDIV. AND PERS.REP.OF EST, CATHERINE RIGSBY



Generated: 07/25/2008

AOC-S-105   Sum Code: CI
Rev. 7-99

Commonwealth of Kentucky
Court of Justice
CR 4.02; Cr Official Form 1

**Civil Summons**

Case Number **08-CI-00538**

Court CI

County GREENUP



---

*Plantiff,* CAROLYN EVANS, INDIV. AND PERS.REP.OF EST, CATHERINE RIGSBY, *Defendant*

ADVOCATE HEALTH, LLC,
SERVE: NATIONAL REGISTERED AGENT
400 WEST MARKET STREET, STE. 1800
LOUISVILLE            KY      40202

The Commonwealth of Kentucky to the above-named Defendant(s):

You are hereby notified that a legal action has been filed against you in this court demanding relief as shown on the document delivered to you with summons. Unless a written defense is made by you or by an attorney on your behalf within twenty (20) days following the day this paper is delivered to you, judgement by default may be taken against you for the relief demanded in the attached complaint.

The name(s) and address(es) of the party or parties demanding such relief against you or his/her (their) attorney(s) are shown on the document delivered to you with this summons.

Circuit/District Clerk, ALLEN KENT REED

By _____ , DC

Date: 07/25/2008

COPY

| Proof of Service | |
|---|---|
| [  ] This Summons was served by delivering a true copy and the Complaint (or other initiating document) To: | |
| [  ] Not Served because: | |
| Date:                    2: | |
| | Served by |

CI    08-CI-00538
CAROLYN EVANS, INDIV. AND PERS.REP.OF EST, CATHERINE RIGSBY

AOC-S-105  Sum Code: CI
Rev. 7-99

Commonwealth of Kentucky
Court of Justice
CR 4.02; Cr Official Form 1



**Civil Summons**

Case Number  **08-CI-00538**

Court  CI

County  GREENUP

*Plantiff,* CAROLYN EVANS, INDIV. AND PERS.REP.OF EST, CATHERINE RIGSBY, *Defendant*

ADVOCATE , INC.,
SERVE:  NATIONAL REGISTERED AGENT
400 WEST MARKET STREET, STE. 1800
LOUISVILLE           KY      40202

**The Commonwealth of Kentucky to the above-named Defendant(s):**

You are hereby notified that a legal action has been filed against you in this court demanding relief as shown on the document delivered to you with summons.  Unless a written defense is made by you or by an attorney on your behalf  within twenty (20) days following the day this paper is delivered to you, judgement by default may be taken against you for the relief demanded in the attached complaint.

The name(s) and address(es) of the party or parties demanding such relief against you or his/her (their) attorney(s) are shown on the document delivered to you with this summons.

Circuit/District Clerk, ALLEN KENT REED

By _____ , DC

Date: 07/25/2008

COPY

| Proof of Service |
| --- |
| [  ] This Summons was served by delivering a true copy and the Complaint (or other initiating document): To: |
| [  ] Not Served because: |

Date: _____, 2____

Served by _____

CI    08-CI-00538

CAROLYN EVANS, INDIV. AND PERS.REP.OF EST, CATHERINE RIGSBY

Generated: 07/25/2008

| AOC-S-105 Sum Code: CI | | Case Number **08-CI-00538** |
| Rev. 7-99 | | Court CI |
| Commonwealth of Kentucky | | County GREENUP |
| Court of Justice | | |
| CR 4.02; Cr Official Form 1 | | |



**Civil Summons**

*Plantiff,* CAROLYN EVANS, INDIV. AND PERS.REP.OF EST, CATHERINE RIGSBY, *Defendant*

 ADVOCAT ANCILLARY SERVICES, INC.,
 SERVE: NATIONAL REGISTERED AGENT
 400 WEST MARKET STREET, STE. 1800
 LOUISVILLE          KY      40202

The Commonwealth of Kentucky to the above-named Defendant(s):

You are hereby notified that a legal action has been filed against you in this court demanding relief as shown on the document delivered to you with summons. Unless a written defense is made by you or by an attorney on your behalf within twenty (20) days following the day this paper is delivered to you, judgement by default may be taken against you for the relief demanded in the attached complaint.

The name(s) and address(es) of the party or parties demanding such relief against you or his/her (their) attorney(s) are shown on the document delivered to you with this summons.

Circuit/District Clerk, ALLEN KENT REED

By _____ , DC

Date: 07/25/2008                    COPY

| Proof of Service |
| [ ] This Summons was served by delivering a true copy and the Complaint (or other initiating document) |
| To: |
| [ ] Not Served because: |
| Date: _____ , 2 _____ |
| Served by |

CI    08-CI-00538
CAROLYN EVANS, INDIV. AND PERS.REP.OF EST, CATHERINE RIGSBY